Good morning. If it may please the Court, my name is William P. Joyce. I'm representing Mr. Renault, the petitioner in this case. In the world of immigration, nothing is easy. This comes down to interpreting various sections of the Immigration and Nationality Act, and specifically we're focusing on what's known as an in absentia removal order. Just to comment on that, that basically what that means is if the immigrant doesn't make it to his hearing, he's properly been served, and that the government can show that it can sustain his charge, and that the notice was sent to the individual's last known address, then you can enter what's known as the in absentia order. This is somewhat of a big deal in the world of immigration, because maybe somewhere around 20% of the immigrant never makes it to the hearing. So the standard for that in absentia order is only that you mail the letter to the last known address. And in our case at hand here today is three sections of the Immigration Act that come to play. Section number one is that the notice was sent to the last known address for the issuance of the order. And the second part of the equation is what happens when the immigrant comes along at some point and says he never received notice. And thirdly, what constitutes address for purposes of the address is somewhere where we move every five years. But in the world of immigrants, it's quite a bit different. It really focuses on where you may be able to receive mail. You may give an address in North Carolina, but in fact you may be spending three or four weeks up in Maine picking blueberries, et cetera. The critical part of this is what constitutes an address. Now, in the case at hand here, the immigrant is required to provide notice of a change of a physical address as well as a mailing address. Well, the section of law that cites, that talks about address is at 239A1F. And it says that the alien must immediately provide the Attorney General with a written record of an address, a telephone number at which an alien may be contacted regarding their proceedings. I would argue that that's the section of law that focuses on address. Now, there's two standards here that have to be taken into account. In 1996, they changed the immigration law. And it used to be that you had to receive the notice by certified mail. Well, this was a very difficult standard. In the best of times, it was hard to find these people. And as a result, it was very difficult to show certified mail. So they changed it to just sending it to the last known address. However, the caveat to protect the immigrant, this was almost too easy. Because you can imagine thousands of cases, people are picked up at the border. Half the time, the immigrant doesn't have a clue as to where he's headed or where he's going. If you could just do that, you'd end up with having every other case with an in absentia order. So they put in a saving clause. And that's, what do you do if you want to argue that you never received notice? And that's the motion to reopen standard that's a bit different than the standard for entering an in absentia order. And what happened in this case, the problem that developed in this case, is the immigration judge essentially said, hey, the notice was sent. We approve. They had an envelope that said, attempted not known. We don't have time to get into what that means exactly. But clearly, it was sent. And also, she went on to say, and by the way, you didn't provide us notice that you had moved on because it's addressed that two affidavits were provided in this case. One by the respondent who said he never got it. And two, the individual who lived at that particular residence for the next five years, that he did get mail at this particular address. But he never got this particular notice that the immigration judge didn't discuss that at all. There was no factual finding whatsoever as to what that meant. Now, in the cases, there's plenty of case law on this point that when you file a motion to reopen, and by the way, it says at any time. So the government makes a big deal as to this motion came up many years later. That's not the point. Once that motion is filed, there needs to be some analysis. And there's a one paragraph discussion in the immigration judge's decision that says, hey, it was sent, and two, you didn't provide a change of address, therefore I'm denying it, and then she moved on. So we have no factual analysis whatsoever of the affirmative affidavits that were put into the case as to whether or not they had any merit or not. She could have cured it well, it happened to be a she, but the judge could have cured this problem simply by saying, hey, these affidavits are incredible, they don't make any sense, I don't give them any weight. That would have at least given the BIA something to work with, the Board of Immigration Appeals. The BIA then goes on. And in front of the IJ, I take it there was no evidence by the government that this particular immigrant had attempted to evade getting the mail notice? There's just no evidence? There's no evidence. There's no analysis. No, I'm not asking about analysis. I'm just asking about what evidence was put in. The evidence was an affidavit. It was all done in writing. There was no oral hearing. An affidavit by the respondent that he lived at. I'm asking about the government's evidence. The government, to my knowledge, the only evidence before the judge is that the letter was sent and they had no change of address. That's all the evidence. That's the problem in the case. And then the BIA goes on to try to, I think, do a little bit of factual analysis on their own, which I would argue is inappropriate. They should have been revolving what the immigration judge didn't do. And they also went on to say, well, look, you didn't provide. But you're not contending that the BIA was prohibited from assessing whatever evidence was in front of the IJ. But you just said the government didn't put in any evidence. That's the problem. There is no evidence. And we're arguing that, and I think the case law definitely supports this case, even in the key BIA case that's cited by both sides and in our First Circuit cases, that you have a right to have the evidence assessed. Because if you take the position that, hey, we sent the letter. Two, you didn't provide us the so-called change of address. No more. The motion to reopen fails. Nobody would ever get back before the court. This creates an impossible hurdle for the immigrant. And I would argue that address means where you can be contacted. Wasn't there evidence that the immigrant had moved several times since that initial address where the notice went? I think there's, uh, there's, uh. That they had moved in with a mother in law? Well, the government tosses in, frankly, the best job of assessing evidence is in the oil brief, which takes the shot. No, that's not the question. The question is, isn't there evidence in the record that the immigrant had moved several times since the initial address without providing notice to the? I don't believe that's in the record. I believe that that's in the government's brief where there's a footnote that says he moved in with a girlfriend. However, the key to this is where you can receive mail. Very quick example. I represent a lot of people on Martha's Vineyard. Can I interrupt you on that before you go off this point? Is the, your argument is that the references in the government's brief to the subsequent moves of your client are not in the record? It was before the BIA or the IJ? I, it's somewhere in his affidavit. He concedes he moved and he was living with somebody. However, I, by my argument, is that doesn't totally control for the motion to reopen. You at an absolute minimum must assess the evidence as to whether it's appropriate. But is that also because I take it your argument is even if he made subsequent moves without telling anybody, that wouldn't justify the refusal to reopen at the time because at the time what the affidavits show, at least would have to be assessed, was that the mailing address. He could receive mail at that time. And there's nothing that contradicts that at that time. There's nothing to contradict. If anything, the evidence before the judge was that he could receive mail at that address. But the only question I had, which is why I brought it up, is because if there is evidence in the record about subsequent moves that were not reported, is that enough to support the board's decision that he was evading, conclusion that he was evading? Well, I would argue that the board's decision is wrong if the cornerstone of that decision is that he was not physically at a place where he could receive mail. But the whole matter could be solved and we wouldn't be sitting here today if the immigration judge had at least made some assessment of whether or not the affidavits provided by the motion to reopen section of the act, which is different from the whether or not you can enter the in absentia order, that I'm arguing that this case should fail on two grounds. One, the immigration judge used the inapplicable section of law in her ruling. My question has been answered. I don't know about my colleague. I'm sorry. I didn't mean to interrupt. That's all right. Thank you. Thank you very much. May it please the court. My name is Kylie Kane. I'm appearing today on behalf of the Attorney General. Your Honor, first, I just want to address the government's brief regarding the multiple addresses that are in the record, which he did not update the immigration court with. And the government's brief at page seven has a whole section on relevant activities since Mr. Renat moved to Massachusetts. He moved all throughout the town of Framingham and never once told the immigration court where he lived. And that includes time after Mr. Costa had moved out of the Corregidor Road address where he was receiving mail. So even after he was no longer getting mail at that address, he did not tell the immigration court where he lived. Now, why that matters is because we have an evasion finding. And so all of the evidence that was presented to the immigration judge in the motion to reopen should be considered when looking at whether the agency's, you know, finding that he evaded is appropriate. And one of the things that's important to note is that since 2003, when at his request, he wanted to transfer his case to Boston, he has never once in writing ever told the immigration court where he lived in Framingham, never once. And that's important. Well, so I guess I understand the argument. But when the BIA affirms the IJ here, the BIA makes no, it makes an evasion finding. But as I read it, there's no reference to the subsequent moves in the BIA's opinion. Are there? Not explicitly, no. What does that mean? Well, what it means is that, and I think... You think the evasion finding, even though it doesn't reference any of those subsequent moves, is predicated on that? Well, it is a factual determination that this court reviews for substantial evidence. And as I understand the substantial evidence standard, we wouldn't just look to the evidence that supports the agency's finding. We'd look at the entire record. I see. And that's part of it. So I guess maybe it's just putting that together with Channery, which is we're supposed to also go by the agency's own rationale. Right. So the agency references here the friend's address. So something like, you know, it says the evasion finding that says it's not enough to give your friend's address. That's what the board... Yes. So that suggests to me that the substantial evidence is of the agency's rationale, which is that the friend's address doesn't count and therefore he evaded, which is quite a different argument than he's an evader because of all the subsequent moves where he didn't give any notice. That's fair. I mean, I'm reading an expansive, I guess, finding of the agency that he evaded. In other words, that would be available maybe on remand if we vacated that, if they want to premise an evasion finding on the record as a whole. But I guess as the record comes to us, there's no indication the evasion finding rests on anything other than the agency's conclusion that if you only are relying on the friend's address, you are an evader. Right, because the agency is determining that under the appropriate statute and regulation you need to provide the address. When you move, you need to provide your address. That's what the statute says. And on that point, could you just address the... You don't mention the Arietta decision in your brief unless I missed it. Maybe you do. It's just the Ninth Circuit case and the other circuit precedent that does allow you to have a non-residential address as your address, which is a friend's address? Yes. I think it's... I'll put it this way. I do not read the agency's decision as saying you can never have somebody receive your mail for you. I also don't read it to say what I think of as post office boxes. You know, a lot of times people will rent a post office box in lieu of a physical address. But the problem here is that Mr. Renaud's affidavit doesn't spell out any of the details that are in the Court of Appeals decisions and these other decisions where an uncle has reside at an address or in some cases a homeless shelter will receive an address for someone as they move around in an attempt to find a permanent address. We don't know why it is that Mr. Renaud decided to have a friend receive his mail when he was in the same town and moving around to three or four different addresses over that 10-year period. We don't know why it is that he didn't just receive mail at the place where he could actually physically be reached. And that I think is important when you're looking at the context of the entire record as to know why it is that someone is sending their mail to somewhere where they don't live. The consequence of that was that his mail got bounced back to the Immigration Court as undeliverable, which as the government points out in the brief, the post office uses that notation when they attempt to mail, deliver mail to a place where that person doesn't live. And that's in fact the case. He did not live there and so the post office did in fact not deliver it to that address because that's not where he lives. That's true in most of the cases in which other courts have concluded it still can count as the address. The reason the issue arises is precisely because you give your friend's address and it's not known until I assume the postman shows up, doesn't see the name on the door or something like that, doesn't drop off the mail, says there's no one there. But then the immigrant comes in and says, yeah, but I had a relationship with that person. That's where I received my mail. That can, because these are evidentiary based questions, that can be a justification for not receiving your mail. It just wasn't here. Well, what's the indication that the board made a finding that that wasn't the case? Well, recall that the immigration judge is, or excuse me, the board is affirming the immigration judge's decision and it's more spelled out in her decision where she discusses, and this is at administrative record page 51, where she's talking about how that he has this obligation to change his address, that he knew he was in proceedings the entire time, that it bounced back to the immigration court, that he hadn't ever affirmatively changed his address with the court, and that he waited nine and a half years to ever inquire about his case. Right, but what she doesn't engage with is the affidavits about the relationship with the friend. That's what seems missing. The only reference to the friend at all is in the BIA opinion. Well, no. Am I wrong on that? You're wrong in the sense that on page 50, and this is still in the immigration judge's decision, she says that she is relaying Mr. Renault's claim in his motion to reopen, and she says that he does assert that his friend Elton continued to live at the Corrie Goodware Workhouse. I guess that's what she, in engaging she doesn't make any assessment of the significance of that fact. To read her opinion, she says he says that, but then all of her arguments about why he hasn't given an address seem to be, if he hadn't asserted that, she'd come out the same way. Just to read it, you can't see anything where she says, and that wasn't sufficient quality evidence to show it was actually an address where he could get mail, and therefore his mailing address. Well, in my opinion, knowing that the notice of hearing bounced back is problematic to knowing that he could receive mail at that address. But that's true in every case that arises in this setting. Right. That's why it arises. Well, and that's why it's important to look at what declarations he's making in his affidavit to explain why that happened. And what we have, for instance, the immigration judge mentions that in the affidavit, he's talking about how, okay, we know he didn't get the notice of hearing, but what happened to the in absentia order itself? That got mailed to the Cory Goddard Road address after he moved out. It didn't get bounced back to the court. Isn't that a problem for you? Well, it's not a problem because that actually It suggests he gets mail there. It suggests he can get mail there, absolutely. That's a fact that weighs against the immigration judge's decision. But that's why the nine-and-a-half years is so important. If he got that in absentia notice in 2004 when it was mailed, why did he wait until 2013, after he had potential eligibility for relief, after marrying a citizen, to come forward? That's problematic in a motion to reopen where the analysis is discretionary. That would be another ground on remand that they might be able to rule against the immigrant. But that's not the ground that they're ruling against him on. The immigration judge explicitly mentions that the affidavit is devoid of any information of what he did in the nine-and-a-half years in between his motion to reopen and his in absentia order. That's in there. It's on page 51 of the immigration judge's decision. She's already wrestled with that. And I think, honestly, completely candidly, this is a completely different case. If he would have come forward in 2004 and said, for some reason the hearing notice bounced back, but I got the order that I'd been removed, please let me reopen my hearing. But there's probably a really good reason why he didn't do that. He had absolutely no relief available to him in 2004. It was not until 2012 when he got married that he then availed himself of the immigration court because he's coming forward and saying that he's eligible for a benefit. When the immigration judge is looking at whether to use, exercise her discretion to reopen a case, these are factors that are considered, and these are factors that are considered in this case on page 51. She's recounting all of this information. The timeline of this case is really important. So you think that she denied it on discretionary ground? Well, a motion to reopen itself is discretionary. In the sense that her basis for it was not a failure to provide the address, but that her opinion is fairly read as saying even though he did provide an address, he waited too long? Both. Both. Yes, yes. Now, admittedly, a lot of the discretionary factors that I'm raising are under her sua sponte denying because he asked for not only reopening based on lack of notice, but also reopening under the immigration judge's sua sponte authority, and a lot of these factors are tucked under that separate analysis under the sua sponte authority. But we know she considered it because they're all here on the face of her decision. Unless your Honors have any more questions, I'm happy to cede the rest of my time back to the Court. Thank you.